# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MUHAMMAD RAHIM,

Petitioner,

v.

JUSTICE OF THE PEACE COURT
NO. 13

and

STONEYBROOK PRESERVATION
ASC.

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N24A-01-002 CLS

Submitted: January 10, 2025
Decided: March 6, 2025

## MEMORANDUM OPINION

*Upon Consideration of Petitioner Rahim's Petition for Writ of Certiorari,*
**GRANTED**.

*Upon Consideration of the Appeal from the Decision of the Justice of the Peace
Court,*
**AFFIRMED.**

Anthony M. Sierzega, Esquire and Richard H. Morse, Esquire of COMMUNITY LEGAL
AID SOCIETY, INC., *Attorneys for Petitioner*.

Jillian M. Pratt, Esquire of MORTON VALIHURA & ZERBATO, LLC, *Attorney for
Respondent*.

**SCOTT, J.**

**INTRODUCTION**

Before the Court is a Petition for Writ of *Certiorari* seeking review of a decision by Justice of the Peace Court No. 13's August 3, 2023 Order in the matter of *Stoney Brook Preservation Associates, LLC. V. Rahim*.[1]  The case concerns a summary possession action for a federally subsidized housing unit in Claymont, Delaware.  Upon review, the Court finds that the lower tribunal committed no error of law.  Therefore, Petitioner's Petition for Writ of *Cetiorari* is **GRANTED**, and the Justice of the Peace Court's Order is **AFFIRMED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]**

**A. THE PARTIES**

Petitioner Muhammad Rahim ("Rahim") was a resident of Stoneybrook Townhomes until his eviction on December 28, 2023.[3]

Respondent Stoneybrook Preservation Associates, LLC ("Stoneybrook") is a Delaware limited liability company that operates Stoneybrook Townhomes, a federally subsidized housing community under the HUD Section 8 program.[4]

---

[1] C.A. No. JP13-22-013011.

[2] Unless otherwise noted, this Court's recitation is drawn from Petitioner's Opening Brief and Reply Brief, Respondent's Answering Brief, and all documents the parties incorporated by reference.

[3] Petitioner's Opening Brief at 2, D.I. 15 ("Opening Br."); Respondent's Answering Brief at 2, D.I. 18 ("Answering Br.").

[4] Answering Br. at 2.

## B. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 1, 2021, Rahim and Stoneybrook entered into a Model Lease for Subsidized Programs for the rental unit located at 303 Earhart Court, Claymont, DE 19701.[5] As a condition of tenancy in the subsidized housing community, residents must meet certain income requirements and comply with both the lease terms and HUD regulations.[6]

On November 14, 2022, Stoneybrook served Rahim a Lease Termination Notice after discovering his alleged failure to properly report his full household income.[7] Specifically, Stoneybrook asserted that during prior periodic certifications, Rahim had been self-completing Employment Verification forms indicating he was a driver for RUS Transportation without disclosing that he was also an owner of the company.[8] On November 18, 2022, following Rahim's non-compliance with the termination notice, Stoneybrook filed a summary possession action in the Justice of the Peace Court ("JP Court").[9]

---

[5] Opening Br. at 3; Answering Br. at 2.

[6] Answering Br. at 2.

[7] *See id.*, App. 1 at AB 10.

[8] *Id.*

[9] Opening Br. at 2; Answering Br. at 3.

The JP Court entered judgment for Stoneybrook, following a full trial on March 30, 2023, finding that Rahim failed to report all income as required and that all notice requirements under HUD regulations and the Landlord-Tenant Code were satisfied.[10] Rahim filed a Notice of Appeal on April 4, 2023, seeking a *de novo* hearing before a three-judge panel.[11] After technical difficulties necessitated a continuance to accommodate Rahim's request for a Pashto interpreter, the *de novo* trial took place on June 22, 2023.[12]

On August 3, 2023, the panel issued its decision awarding possession to Stoneybrook.[13] The panel determined that Rahim had materially breached the lease by knowingly providing incomplete information, specifically finding that he had withheld information about owning a business on his Personal Income Declaration forms.[14] The panel concluded this omission, combined with Rahim's completion of his own employment verification form on behalf of the company he owned, demonstrated an intentional effort to mislead the landlord.[15]

---

[10] *See* Answering Br., App. 2 at AB 33.

[11] *Id.* at AB 36.

[12] *Id.*

[13] *See id.* at AB 36–38; Answering Br., App. 3 at AB 39 ("JP Court Panel Order").

[14] *See* JP Court Panel Order at AB 39.

[15] *Id.*

Rahim filed a Motion for New Trial and Reargument on August 11, 2023, which was denied on December 12, 2023.[16]  The Writ of Possession was finalized on December 28, 2023, at which time Stoneybrook took possession of the rental unit.[17]  Rahim filed this Petition for Writ of *Certiorari* on January 10, 2024, asserting that the decision must be voided and remanded due to errors of law by the lower tribunal's three-judge panel.[18]  The matter has been fully briefed,[19] and it is ripe for decision.

**PARTIES' CONTENTIONS**

### A. PETITIONER'S CONTENTIONS[20]

Rahim advances several arguments in support of his petition.  First, he contends that reversal is required because the JP Court did not find that he caused or threatened to cause irreparable harm, which he argues is required under 25 *Del. C.* § 5513(b), the statute under which Stoneybrook proceeded.

Second, Rahim argues that the JP Court committed error of law by entering judgment for Stoneybrook on its claim that termination was justified by fraud when the court never made a finding that fraud occurred.  He maintains that the complaint

---

[16] Answering Br., App. 3 at AB 42–43.

[17] Answering Br. at 5.

[18] *See* Petition for Issuance of a Writ of Certiorari and Appeal for Judicial Review at 7, D.I. 1.

[19] *See generally* Opening Br.; Answering Br.; Petitioner's Reply Brief, D.I. 19 ("Reply Br.").

[20] Petitioner's contentions are drawn from his Opening Br. and Reply Br.

specifically alleged fraud as the basis for lease termination, and therefore, Stoneybrook was required to prove fraud rather than mere lease noncompliance.

Third, Rahim contends that even if fraud had been found, the facts established by the JP Court would have been insufficient to establish fraud under Delaware law. Specifically, he argues that three essential elements of fraud were not proven: (1) intent to induce action, (2) justifiable reliance, and (3) resulting damages.

Finally, Rahim asserts that the JP Court committed error of law in its interpretation of the Personal Declaration Forms. He points out that while the court found he "withheld information regarding owning a business repeatedly," the 2022 form actually showed that he had indicated "yes" to business ownership.

## B. RESPONDENT'S CONTENTIONS[21]

Stoneybrook maintains that the JP Court's decision should be affirmed. First, it argues that Rahim's conduct constituted material noncompliance with the lease terms, specifically citing his failure to fully report his business ownership and income from RUS Transportation.

Second, Stoneybrook contends that Rahim mischaracterizes its claim by focusing solely on fraud. It argues that the complaint alleged both fraud and material noncompliance with the lease, and that proof of either would justify termination.

---

[21] Respondent's contentions are drawn from its Answering Br.

Stoneybrook maintains that the JP Court properly found material noncompliance based on Rahim's failure to provide complete and accurate information as required by the lease.

Third, Stoneybrook argues that even if fraud were the sole basis for termination, the elements of fraud were met. It contends that Rahim's repeated failure to disclose his business ownership, combined with discrepancies between reported income and tax returns, demonstrates fraudulent intent. Stoneybrook further argues that it took action upon discovering these discrepancies and faced potential harm in its relationship with HUD due to Rahim's inaccurate disclosures.

Finally, Stoneybrook asserts that the JP Court's interpretation of the Personal Declaration Forms was a factual determination not subject to review *on certiorari*, and that the JP Court had adequate reasoning for its decision based on the totality of the evidence presented.

## STANDARD OF REVIEW

This Court has original, and exclusive, trial court jurisdiction to issue writs of *certiorari* to the Justice of the Peace Court in summary possession cases.[22]

---

[22] *Maddrey v. Justice of the Peace Court 13*, 956 A.2d 1204, 1212 (Del. 2008).

Petitioners for a writ of *certiorari* must satisfy two threshold conditions—"the judgment must be final and there can be no other available basis for review."[23]

On *certiorari,* the Court's review is on the record, and it may not weigh evidence or review the lower tribunal's factual findings.[24] Rather, the reviewing court considers the record before the lower tribunal to determine whether it: (1) exceeded its jurisdiction; (2) committed errors of law; or (3) "proceeded irregularly."[25] In these situations, the decision of a lower tribunal will be reversed: (1) for exceeding the tribunal's jurisdiction only if the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction; (2) for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has "proceeded illegally or manifestly contrary to law;" and (3) for irregularities of proceedings if the lower tribunal failed to create an adequate record for review.[26]

## DISCUSSION

There is no dispute that the decision of the three-judge panel of the JP Court constitutes the final trial adjudication of the summary possession complaint. Rahim

---

[23] *Id.* at 1213.

[24] *Reise v. Board of Bldg. Appeals of City of Newark,* 746 A.2d 271, 274 (Del.2000).

[25] *Id.* (citing 1 *Woolley's Delaware Practice,* § 896 (1906)).

[26] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 865 A.2d 521 (Del. 2004) (TABLE) (citations omitted).

8

does not argue that the JP Court exceeded its jurisdiction or proceeded irregularly. Instead, he contends that the JP Court committed legal error in three ways: (1) by failing to find fraud while granting possession based on a fraud claim; (2) by finding material noncompliance without sufficient factual findings to support fraud under Delaware law; and (3) by misinterpreting the Personal Declaration forms.[27] These arguments are unpersuasive.

## A. THE JP COURT PROPERLY APPLIED THE CONTROLLING LEGAL FRAMEWORK

The Delaware Residential Landlord Tenant Code expressly provides that, "[w]ith regard to a tenant occupying a federally-subsidized housing unit, in the event of any conflict between the terms of this Code and the terms of any federal law, regulations or guidelines, the terms of the federal law, regulations or guidelines shall control."[28] Rahim's argument that Delaware common law fraud should apply to this action therefore fails.[29] The framework for analyzing the alleged fraud in this case must be derived from federal standards rather than state common law.

Under HUD's Regulations, fraud may be established if "(1) the tenant was made aware of program requirements and prohibitions (i.e., all appropriate

---

[27] *See* Opening Br.; Reply Br.

[28] 25 *Del. C.* § 5106(e); *see also Delaware State Hous. Auth./Clark's Corner v. Just. of Peace Ct. 16*, 2008 WL 4120038, at *4 n.27 (Del. Super. Aug. 8, 2008).

[29] Opening Br. at 10–11; Reply Br. at 9–11.

9

signatures are on the intake documents);" and "(2) [t]he tenant intentionally misstated or withheld some material information. . . ."[30] "Fraudulent intent can also be demonstrated by documenting that: … (d) [t]he tenant omitted material facts that were known to the tenant (e.g., employment of self of other household members) . . . ."[31] A landlord's "authority to pursue eviction in cases of tenant fraud is grounded in the material noncompliance provision contained in both the model lease and in the regulations [24 *CFR* 247.3]."[32] "Material noncompliance includes 'knowingly provides inaccurate or incomplete information.'"[33]

Under 24 *CFR* 247.3(a), a landlord may terminate a lease on the grounds of: (1) a tenant's material noncompliance with the rental agreement, (2) the tenant's material failure to carry out obligations under any state landlord and tenant act, (3) criminal activity by a tenant, or (4) other good cause.[34] 24 *CFR* 247.3(c)(3) further defines "material noncompliance" to include situations where a tenant either: (i) fails to supply on time all required information on the income and composition, or

---

[30] U.S. Dep't of Hous. & Urb. Dev., *HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs*, § 8-19(C).

[31] *Id.* § 8-19(C)(2).

[32] *Id.* § 8-19(D)(1).

[33] *Id.*

[34] 24 *C.F.R.* § 247.3(a).

eligibility factors, of the tenant household…; or (ii) knowingly provides incomplete or inaccurate information as required under these provisions."[35]

While Stoneybrook cited both 25 *Del. C.* § 5513(b) and 24 *CFR* 247.3(c),[36] establishing material noncompliance under the federal regulations alone is sufficient to support eviction. The JP Court's ruling was based on "grounds for termination pursuant to the guidelines found with the HUD Occupancy Handbook."[37] The panel concluded that "[Stoneybrook] has met the burden of proof to show that there has been material noncompliance with terms of the lease, as [Rahim] knowingly provided incomplete or inaccurate information."[38] For the purpose of this writ, the JP Court did not commit errors of law by applying the appropriate legal framework.

### B. THE JP COURT DID NOT ERR IN ITS DETERMINATION THAT RAHIM MATERIALLY BREACHED HIS LEASE AGREEMENT

The JP Court's determination that Rahim knowingly withheld material information and materially breached his lease agreement, and thus, ground for summary possession, is supported by the record. The panel found that Rahim withheld information regarding owning a business on his Personal Declaration

---

[35] 24 *C.F.R.* § 247.3(c)(3).

[36] *See* JP Court Panel Order at AB 38; Answering Br. at 12.

[37] JP Court Panel Order at AB 39.

[38] *Id.*

Forms.[39]  Specifically, it determined that this withholding, combined with his self-completion of employment verification forms on behalf of the company he owned, demonstrated that he "omitted material facts known to him."[40]  Such a pattern of non-disclosure and self-completion prompted the conclusion that the omissions were intentional rather than inadvertent.

These findings satisfy both prongs of material noncompliance under 24 CFR 247.3(c)(3) and fraud under the HUD Regulations—Rahim failed to supply required information about his business ownership status, and he knowingly provided incomplete information by omitting his ownership role while self-verifying his employment.  The JP Court had before it substantial documentation establishing that Rahim was aware of program requirements regarding income disclosure and reached its conclusion that Rahim intentionally withheld material information.[41]  On the record before this Court, no error of law appears in the JP Court's conclusion that Rahim's conduct is sufficient to justify termination of his tenancy under the applicable HUD regulations.

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at AB 37–38.

## C. RAHIM'S ARGUMENTS DO NOT DEMONSTRATE ERROR OF LAW

Rahim's contention that the JP Court misinterpreted the 2022 Personal Declaration Form likewise fails to establish legal error.[42]  Rahim argues that the JP Court erroneously characterized the 2022 form—on which he marked "yes" in the section inquiring whether he owned a business—as not indicating business ownership and "based its conclusion that [Rahim] omitted facts, in part on that erroneous characterization."[43]  He suggests this constituted legal error rather than a factual determination.[44]

This argument misconstrues the nature of the JP Court's findings.  The court's decision did not turn solely on the 2022 form, but rather on the pattern of non-disclosure.[45]  Stoneybrook correctly notes that this Court's role on *certiorari* review is not to weigh evidence or reevaluate factual findings.  Rahim's attempt to reframe the interpretation of documentary evidence as a legal question rather than a factual determination is unavailing.[46]  The characterization of the form and what it revealed about Rahim's intent fall squarely within the fact-finding province of the JP Court.

---

[42] Opening Br. at 13–15.

[43] Reply Br. at 12.

[44] *Id.*

[45] JP Court Panel Order at AB 37–38.

[46] Rahim raised similar arguments on the Motion for Reargument: (1) that the reference to the 2020 Declaration form should be the 2021 and 2022 Declaration Forms; and (2) that how him and his son filled out the forms were appropriate.  The JP Court held that there was no error of fact, and

## CONCLUSION

The JP Court's decision demonstrates no error of law that would warrant reversal under this Court's standard of review on *certiorari*. Accordingly, Petitioner's Petition for Writ of *Certiorari* is **GRANTED**, and the Justice of the Peace Court's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ Calvin L. Scott*

Judge Calvin L. Scott, Jr.

---

each jurist independently came to the conclusion that he failed to report required information. *See* Answering Br., App. 3 at AB 42–43.